**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-0326** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **DARNELL LAMONT DOSS** | : | |

**MEMORANDUM**

Presently before the court in the above-captioned action is the motion (Doc. 30) of defendant Darnell Lamont Doss ("Doss") requesting suppression at trial of physical evidence obtained during, and statements made subsequent to, a July 27, 2012, traffic stop.  For the reasons that follow, the court will deny Doss's motion.

## I.   Findings of Fact[1]

On July 27, 2012, Harrisburg City Police Officer Robert Yost ("Officer Yost") and Pennsylvania State Parole Agent Gregg Brunner ("Agent Brunner") were on patrol in the Allison Hill neighborhood of Harrisburg, Pennsylvania.  (See Tr. 4:14-5:9).[2]  Yost explained that city police officers teamed up with state parole agents on "saturation details" in certain parts of the city with the goal of making contact with known probation parolee offenders.  (See Tr. at 4:21-5:1).  Officer Yost's supervising officer, Corporal Terry Wealand ("Corporal Wealand"), was patrolling the same area

---

[1] The court's findings are based upon its assessment of the credibility of testimonial evidence offered during the evidentiary hearing held on July 22, 2014.

[2] Citations to "Tr. __" are to the official transcript of proceedings of the July 22, 2014, evidentiary hearing, docketed at Docket No. 64.

as part of the same saturation detail with Agent Brunner's supervisor, Peter Hans ("Agent Hans").  (<u>Id.</u> at 5:5-25).

Officer Yost testified that while on patrol, he received information over the police radio and through cell phone communications that state parole agents were following Doss.  (<u>Id.</u> at 6:3-8).  Corporal Wealand reported that Doss was "trying to get away from them" and advised Officer Yost that Doss was driving a black Chevrolet Impala in the area of 17th Street in Harrisburg without a valid driver's license.  (<u>Id.</u> at 6:3-17).  The radio transmission transcript does not refer to an invalid driver's license or curfew violations, but Officer Yost explains that he was receiving information from both radio and cell phone communications.  (<u>Id.</u> at 15:15-22, 18:21-19:23).  The radio transmission transcript also reveals that Officer Ty Meik ("Officer Meik") advised that he believed that Doss was traveling with a gun.  (<u>See</u> Doc. 65-1 at 1).

At the direction of Corporal Wealand, Officer Yost positioned his unmarked police vehicle behind Doss's Impala and asked Corporal Wealand whether "we got the green light to pull it over?"  (Doc. 65-1 at 2).  Corporal Wealand directed Officer Yost to "go ahead and pull it over," (<u>id.</u>), at which point Officer Yost engaged his emergency lights and equipment in attempt to pull over the vehicle.  (<u>See</u> Tr. at 7:7-20).  Doss fled at a high rate of speed.  (<u>Id.</u> at 7:11-8:2).  Officer Yost gave chase, and moments later, Doss lost control of his car, left the roadway, and crashed into a shed.  (<u>See id.</u> at 8:6-14).  Officer Yost then exited his vehicle and approached the Impala to find Doss attempting to open the passenger-side door; Officer Yost opened the driver-side door and struggled with Doss until other officers arrived on the scene, tased Doss, and

removed him from the vehicle.  (Id. at 8:18-10:2).  Officers then arrested Doss and read

him his Miranda rights.[3]  (Id. at 9:25-10:9).

Doss was transported to Harrisburg City Police Department for booking and, in

accordance with booking procedures, Officer Yost searched Doss for contraband.  (Tr.

at 11:21-12:9).  During that search, Officer Yost discovered "a large quantity of crack

cocaine and powder cocaine" in Doss's underwear.  (Id.)  At the scene of the accident

and arrest, officers conducting a tow inventory of the vehicle discovered a handgun

on the passenger side.  (Id. at 11:2-9).  Officer Yost testified that the officers at the

scene stopped the search immediately upon discovering the handgun and contacted

the owner of the vehicle, Enterprise Car Rental Company, to request permission to

search the remainder of the vehicle.  (Id. at 11:10-18).  An Enterprise representative

gave verbal consent to search the car, but no additional contraband was discovered.

(Id. at 11:19-20).  Thus, as a result of the traffic stop and subsequent chase and arrest,

law enforcement recovered evidence of Doss possessing a handgun and individual

bags of crack cocaine.

## II.    Procedural History

On December 19, 2012, a federal grand jury returned a four-count indictment

(Doc. 1) against Doss, charging him with various offenses arising out of the July 27,

2012, traffic stop, search, and arrest.  Specifically, the indictment charges Doss with:

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count

---

[3] Doss does not recall whether Officer Yost advised him of his Miranda rights
following his arrest.  (See Tr. at 21:6-10).

I); possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841

(Count II); possession of cocaine with intent to distribute, in violation of 21 U.S.C. §

841 (Count III); and using, carrying, or possessing a firearm during and in relation to

a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count IV).  (See Doc. 1).  On

February 26, 2014, the grand jury returned a superseding indictment (Doc. 35) that

restated all of the original charges and added a charge for possession of cocaine base

with intent to distribute arising on May 15, 2009.  Doss pleaded not guilty to all counts.

(Doc. 9).

On February 11, 2014, Doss, through counsel, filed the instant motion (Doc. 30)

to suppress evidence.  At the request of counsel, the court conducted an evidentiary

hearing on the motion on July 22, 2014.  (See Doc. 64).  The motion is fully briefed,

(Docs. 31, 65, 67), and ripe for disposition.

### III.   <u>Discussion</u>

Doss's argument in support of his motion has been a moving target throughout

the pendency of this action.  In its first iteration, Doss argued that the traffic stop and

subsequent chase occurred late at night while he was driving a rental vehicle, such

that officers could not have identified him prior to stopping his vehicle.  (See Doc. 30 ¶

9-10; Doc. 31 at 4).  Doss appears to abandon this argument in his supplemental brief.

(See Doc. 67 at 3-4).  In any event, the record as developed during the evidentiary

hearing on Doss's motion refutes this position.  The radio transmission transcript,

coupled with Officer Yost's testimony, establish that Harrisburg police officers, in

conjunction with state parole agents, identified Doss as the driver of the rental vehicle

4

long before the vehicle was stopped and Doss was arrested.  (See, e.g., Ex. 3 at 1 (identifying "Darnell Doss" as "some guy trying to get away from [state parole agents]" and identifying the vehicle Doss was driving as a "Chevy Impala")).  This evidence moots Doss's initial speculation that "it is unlikely [officers] could have likely identified him in the dark of night driving a car. . . ."  (Doc. 30 ¶ 10).  To the extent it has not been abandoned, the court rejects this argument.

In his supplemental brief, Doss changes course and contends that Officer Yost did not have a reason independent of "what he heard from someone with a radio" to initiate the traffic stop.  (See Doc. 67 at 1).  The government's response is two-fold: first, that Corporal Wealand had reasonable suspicion to initiate the traffic stop based on information he possessed related to Doss's parole, curfew, and driver's license status, and Doss's possession of a handgun, and, second, that the collective knowledge doctrine permitted Officer Yost to stop Doss, despite a lack of personal knowledge, at the direction of Corporal Wealand and based on Corporal Wealand's reasonable

suspicion or probable cause.  (See Doc. 65 at 7-14).  The court is compelled to agree with the government.[4]

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. See U.S. CONST. AMEND. IV; Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); see also United States v. Kim, 27 F.3d 947, 950 (3d Cir. 1994).  Subject to narrow and limited exceptions, a search without a warrant is unreasonable.  See Kyllo v. United States, 533 U.S. 27, 31 (2001); see also United States v. Whitted, 541 F.3d 480, 484 (3d Cir. 2008) ("Whether a search is reasonable will depend upon its nature and all of the circumstances surrounding it, but, as a general matter, warrantless searches are unreasonable.").  The government bears the burden of demonstrating that an exception to the Fourth Amendment's warrant requirement existed at the time of the search.  See Vale v. Louisiana, 399 U.S. 30, 34 (1970); United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992).

---

[4] As a preliminary matter, the court observes that the record before it likely establishes reasonable suspicion for Officer Yost, personally, to initiate the traffic stop.  Corporal Wealand told Officer Yost, either by radio transmission or by cell phone, that Doss was under state parole supervision and was driving without a valid driver's license.  (See, e.g., Tr. at 6:3-15 (explaining that saturation detail was "going between cell phones and radio [because] state parole at the time didn't have the capabilities to talk to us directly through police radios, but it was informed, it was told to me that he was driving the Impala without a valid driver's license").  The radio transmission transcript identifies Doss as an individual "trying to get away from" state parole agents.  (See Doc. 65-1 at 1).  And it also establishes that Officer Meik warned Officer Yost and others on the radio transmission that Doss was traveling with a handgun.  (See id. ("Let them know that I did think that I heard that he known [sic] have a gun.")).  However, because the collective knowledge doctrine controls the disposition of Doss's motion, the court does not determine as  a matter of law whether Officer Yost, personally, had reasonable suspicion to stop Doss.

With respect to traffic stops, officers may make warrantless, investigative stops of a vehicle when they have a "reasonable suspicion" of criminal conduct.  See United States v. Hensley, 469 U.S. 221, 226 (1985) ("[L]aw enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity.") (citing United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975)).  A court determines whether reasonable suspicion exists by examining the totality of the circumstances.  United States v. Lewis, 672 F.3d 232, 237 (3d Cir. 2012) ("When determining whether an officer possessed reasonable suspicion to conduct a traffic stop, [the court] must consider the totality of the circumstances.") (citing United States v. Silveus, 542 F.3d 993, 1000 (3d Cir. 2008)).  The reasonable suspicion standard is considerably less onerous than the probable cause requirement.  See United States v. Mathurin, 561 F.3d 170, 173-74 (3d Cir. 2009).  An officer has a reasonable suspicion to stop a vehicle when he or she has a "reasonable, articulable suspicion that [one or more of its occupants] ha[ve] been, [are], or [are] about to be engaged in criminal activity."  United States v. Place, 462 U.S. 696, 702 (1983); see also Mathurin, 561 F.3d at 174.

When Fourth Amendment challenges arise out of joint investigative endeavors, courts employ the "collective knowledge doctrine," under which the knowledge of one law enforcement officer may be imputed to another.  See United States v. Whitfield, 634 F. 3d 742, 745-46 (3d Cir. 2010) (applying collective knowledge doctrine to a Terry seizure); United States v. Belle, 593 F.2d 478, 497 n.15 (3d Cir. 1979) (applying doctrine when analyzing whether officers had probable cause to arrest).  The Third Circuit

Court of Appeals has made clear that "'the legality of a [search and] seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to [search and] seize the suspect.'" Berg v. County of Allegheny, 219 F.3d 261, 270-71 (3d Cir. 2000) (quoting Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997)).  In other words, an arresting officer need not individually possess facts supporting a finding of reasonable suspicion or probable cause; rather, he or she may rely on "an instruction to arrest delivered by other officers possessing probable cause."  United States v. Burton, 288 F.3d 91, 99 (3d Cir. 2002) (noting that arresting officer "need not possess an encyclopedic knowledge of the facts supporting probable cause").

The collective knowledge doctrine is dispositive to Doss's arguments *sub judice*. The record establishes that each participant in the radio transmission was aware that Doss was on state parole supervision, that he was "trying to get away from them," and that he likely was carrying a firearm.  (Doc. 65-1 at 1).  The record also establishes that Corporal Wealand knew (and informed Officer Yost) that Doss was driving without a valid driver's license.  (See, e.g., Tr. at 6:3-15 (explaining that saturation detail was "going between cell phones and radio [because] state parole at the time didn't have the capabilities to talk to us directly through police radios, but it was informed, *it was told to me that he was driving . . . without a valid driver's license*" (emphasis added)). The government has sufficiently established that Officer Wealand had reasonable suspicion that Doss was engaged in criminal activity immediately preceding the

8

July 27, 2012, traffic stop, and Doss offers no evidence to contradict the record created by the government. Consequently, the collective knowledge doctrine imputes Corporal Wealand's reasonable suspicion to Officer Yost for purposes of Fourth Amendment search and seizure inquiries. See Whitfield, 634 F. 3d at 745-46. The court will deny Doss's motion (Doc. 30) to suppress evidence obtained as a result of the traffic stop.

IV.    **Conclusion**

For the foregoing reasons, the motion to suppress (Doc. 30) will be denied. An appropriate order follows.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        August 21, 2014